State v. Kindred.

THE STATE v. KINDRED, Appellant.

Division Two, February 21, 1899.

1. **Murder**: INDICTMENT: FELONIOUS AND DELIBERATE. It is held that the indictment in this case charges that the wounding was felonious and deliberate.

2. ———: CONTINUANCE: DILIGENCE: PRESUMPTION OF ARRAIGNMENT. The homicide was committed February 5, and defendant was indicted at the regular March term. The courthouse and indictment were destroyed by fire on March 24, and before the end of the month at an adjourned term defendant was again indicted, and advised that his trial would occur May 23. A witness went to Oklahoma about May 1, but his address was unknown, and it was entirely problematical when or where he could be found. Defendant took no steps to have the witness subpoenaed until May 12. *Held*, first, that from the fact that the defendant issued his subpoenas, for the adjourned term in May, it will be presumed that the arrignment was had at the adjourned term in March; second, that the trial court properly held that no diligence was shown to secure the presence of the witness.

3. ———: ———: MATERIALITY: DISCLOSING DEFENSE. It is incumbent on defendant to show the materiality of the testimony of the absent witness by disclosing the nature of the defense, so that the court may determine whether such testimony would be competent and relevant if offered, and if the defendant at the time he files his affidavit for a continuance has not disclosed that his defense will be self-defense, it is not error to deny the continuance.

4. ———: INSTRUCTION: DELIBERATION. An instruction in the exact form as the one given in State v. Talbott, 73 Mo. 347, and approved in State v. Herrell, 97 Mo. 105, is set out at length, and again approved.

5. ———: DEGREES: APPREHENDED DANGER. Defendant armed himself with a deadly weapon and then deliberately sought out and killed his unarmed adversary at his store, entering his office with his hand on the pistol in his pocket and notifying him he had "come to settlo with him," and then by his testimony tried to induce the jury to believe he apprehended deceased was going to kill him because he saw he had his hand in his pocket, but making no other demonstration except to order him from the store. *Held*, that no instruction should have been given concerning the various degrees of manslaughter, nor for murder in the second degree.

State v. Kindred.

6. ———: ORDERING DEFENDANT TO LEAVE STORE. The proprietors violate no privilege of another when they order him to leave their store in which he is committing a breach of the peace by his indulgences in challenges to fight and abusive epithets.

7. ———: DEGREES: USE OF DEADLY WEAPONS: MANIFEST INTENTION. Where a deadly weapon is used and the intention to kill is manifest, not only by defendant's previous preparation, but by his explicit testimony, the case is one of murder in the first degree.

8. ———: DRUNKENNESS. Drunkenness is no excuse or justification for crime.

*Appeal from Mercer Circuit Court.*—HON. PARIS C. STEPP, Judge.

AFFIRMED.

J. F. DUFF and ORTON & ORTON for appellant.

(1) The indictment is not sufficient in this, that it does not charge that the giving of the wound was felonious or deliberate. State v. Feaster, 25 Mo. 324; State v. Emeriche, 87 Mo. 110; State v. Deffenbacher, 51 Mo. 26; State v. Herrell, 97 Mo. 108; State v. Clayton, 100 Mo. 519; State v. Fairlambs, 121 Mo. 154. Indictments for murder require great strictness. State v. Sides, 64 Mo. 383; State v. Lakey, 65 Mo. 217. (2) The court should have granted a continuance in this case. John Willeford was in the front part of the store at the time and had a better opportunity of seeing what was done at the moment of the shooting, than any other witness. His evidence was material. (3) The court in the first and fourth instructions for the State, used the technical words "lawful provocation" and "just provocation," but did not define these terms, and the jury was left in ignorance as to what these terms meant. This was error. (4) The court should have instructed on the law of manslaughter. Instead the court in the modification of instruction 2, prayed by the defendant, expressly told the jury that they must convict the defendant of murder or acquit him.

State v. Elliott, 98 Mo. 150; State v. Wilson, 98 Mo. 440; State v. Bulling, 105 Mo. 204; State v. Pettit, 119 Mo. 411. (5) The instructions entirely ignored the testimony of the defendant and was error. State v. Banks, 73 Mo. 592; State v. Partlow, 90 Mo. 608; State v. Wensell, 98 Mo. 147; State v. Wilson, 85 Mo. 134. (6) The seventh instruction given for the State is not the law and there was no evidence on which to base it. The evidence all showed that the Alleys ordered defendant out of the store, and that he started to go out, and they followed him in a threatening manner. No witness testified that defendant refused to go out. Indeed, they all stated that he was going out. This instruction tells the jury that they had a right to assault defendant (lay hands on him) and put him out by force, and if defendant resisted such "laying on of hands," either by actual resistance or threatened resistance, then the Alleys were justified in the use of force. Under this instruction, the kicking of defendant by Joe Alley, and the drawing of a weapon by Andrew Alley, were justified. There was nothing that defendant had done that justified these acts of the Alleys.

EDWARD C. CROW, Attorney-General, and SAM B. JEFFRIES, Assistant Attorney-General, for the State.

(1) The indictment specifically charges that the giving of the mortal wound was both felonious and deliberate. The citations prsented are not to be attacked by us, but an examination of them will show that defendant has misconceived their purport and application when applied to the indictment in this case. State v. Turlington, 102 Mo. 647; State v. McDaniel, 94 Mo. 301; State v. Burnest, 81 Mo. 119; State v. Hughes, 82 Mo. 86; State v. Burns, 99 Mo. 471. (2) No error was committed in overruling the defendant's application for a change of venue based on the bias and prejudice of the inhabitants of the county against him.

The statute lodges the determination of defendant's rights in this regard in the sound discretion of the trial court and unless it appears that this discretion has been abused, this court will not interfere.   State v. Holcomb, 86 Mo. 371; State v. Wilson, 85 Mo. 134; State v. Loe, 98 Mo. 609; State v. Williams, 77 Mo. 660; State v. Dyer, 139 Mo. 205. (3)   The granting or refusing of a continuance is largely a matter within the discretion of the trial court and nothing but an abuse of that discretion will warrant an interference by the appellate court.   State v. Parker, 106 Mo. 217; State v. McGuire, 96 Mo. 197; State v. Walker, 69 Mo. 274; State v. Bailey, 94 Mo. 311; State v. Jewell, 90 Mo. 467; State v. Wilson, 85 Mo. 134; State v. King, 74 Mo. 612; State v. Ward, 74 Mo. 253; State v. Able, 65 Mo. 357; State v. Simmons, 68 Mo. 305; State v. Day, 100 Mo. 242; State v. Carter, 98 Mo. 176; State v. Banks, 118 Mo. 117. The application for a continuance on the ground of the absence of a witness must state facts which the absent witness would testify to and the conclusions deducible from said facts.   State v. Strattman, 100 Mo. 540; State v. Jewell, 90 Mo. 467; State v. Pagels, 92 Mo. 308; State v. Bryant, 93 Mo. 278.   It is not shown where the absent witness may be found.   This is imperative. State v. Henson, 81 Mo. 384; State v. Underwood, 76 Mo. 630; State v. Lange, 59 Mo. 418; R. S. 1889, sec. 4181. An affidavit of an absent witness by whom it is alleged such facts can be shown as will prove the act done in self-defense, should be overruled unless such application shows that the defendant intended to interpose the plea of self-defense. State v. Bryant, 93 Mo. 273; State v. Pagels, 92 Mo. 300; State v. Mitchell, 98 Mo. 637; 1 Bishop's Crim. Proc., sec. 951a. In support of our contention that due diligence was not used and for that reason the defendant not entitled to a reversal on that ground, we call the court's attention to the cases of

State v. Sneed, 95 Mo. 551; State v. Gamble, 108 Mo. 500; State v. Banks, 118 Mo. 117; State v. McCoy, 11 Mo. 517. (4) An instruction on manslaughter should not be given unless warranted by the testimony. In this case the evidence did not disclose such facts as would warrant an instruction of that character. State v. Horn, 115 Mo. 416; State v. Sneed, 91 Mo. 552; State v. Anderson, 89 Mo. 472; State v. Smith, 114 Mo. 422; State v. Robb, 90 Mo. 34; State v. Blunt, 91 Mo. 503; State v. Henson, 106 Mo. 66; State v. Dixon, 78 Mo. 438; State v. Rider, 95 Mo. 474; State v. Umbles, 115 Mo. 452.

GANTT, P. J.—On the fifth day of February, 1898, Peter Kindred, the defendant herein, shot and killed Andrew A. Alley in the town of Mercer, in Mercer county, Missouri.

At the regular March term of the circuit court of said county defendant was indicted. Afterwards on the twenty-fourth day of March, 1898, the record recites that the courthouse of Mercer county was destroyed by fire and all the papers in said cause together with the indictment against defendant were burned. At the adjourned March term, 1898, of said court a new grand jury was ordered and impaneled by the court, and on May 23, 1898, returned a new indictment for murder against defendant. This was duly served on defendant on the morning of the twenty-fourth of May. On the twenty-fifth day of May defendant filed an application for a change of venue which was heard by the court on the same day and ordered overruled. On the same day defendant made an application for a continuance which was heard and denied by the court. Defendant was thereupon duly arraigned and pleaded not guilty to the charge in the indictment. A special venire was issued returnable for May 26, which was duly served and a panel of forty jurors was obtained on that day. On May 27, a jury of

twelve was selected and sworn to try the case. The cause thereupon proceeded, and on May 29, 1898, the said jury returned a verdict of guilty of murder in the first degree. Motions for a new trial and in arrest of judgment were filed in due time, heard and overruled, and defendant was sentenced to be hung on July 8, 1898. An appeal to this court was prayed and granted and leave to file a bill of exceptions by September 1, 1898, was granted. The bill of exceptions was perfected and filed on August 25, 1898.

These facts seem to be established by the record. Peter Kindred, the defendant, is a young man about twenty-two years old. He lived on a farm near the town of Mercer, in Mercer county in this State. On the fifth day of February, 1898, he left his home and went to Mercer, where he took a train for Lineville. He remained in Lineville until one o'clock in the afternoon of that day. While there he obtained some whiskey from a drugstore. He returned to Mercer about two o'clock. His subsequent movements are traced as follows: He visited a picture gallery, a restaurant and a blacksmith shop. He then went to the hardware store of Andrew and Joseph Alley in said town about 3 o'clock. It appears that prior to and at this time defendant was indebted to the firm of Alley Brothers in a small sum, for which they had obtained judgment.

The store room was about ninety feet in length. The office was in the rear end from the street or west entrance. The store was heated by a stove near the rear end. At the time defendant came into the store there were in it Andrew A. Alley in the cashier's office at work, Joseph Alley, Clint McIntosh, Mr. Ganen, Thomas Wells, James Talbott and Don. Alley, sitting about and around the stove.

When defendant entered the store he went at once to the little office in the rear where Andrew Alley, the deceased, was engaged on his books. He was heard to say to Andrew that he wanted to settle with him. Andrew

reached over to get the books to look at defendant's account, whereupon defendant interrupted him by saying, "No, I want to fight it out." Andrew replied that he didn't settle his accounts that way. Defendant then said, "You don't pay your debts." Andrew replied, "You can't find a man in this country that says I owe him a dollar and didn't pay it."

Thereupon Joseph Alley got up and said to defendant "Pete, you are looking for trouble." Defendant then backed off towards the counter, with his hand in his pocket and dared Joseph out to fight. Joseph replied that he was no fighting cock and that defendant was not in a good condition to settle that day, to come back some other day. Defendant then swore he could whip any Alley. Joseph then ordered him out of the store.

Defendant started to the front door, and Joseph and Andrew Alley followed him down the aisle created by the counter on one side and a row of stoves which occupied the middle of the store. On the way to the door defendant moved back sideways. The State's evidence tended to prove that neither Joseph or Andrew Alley got closer to defendant than five or six feet; that they were not saying anything as they moved toward the front door; that neither of them was armed, and that they neither struck nor kicked defendant. When they had gone to a point about twenty feet from the front door, defendant drew his revolver and shot Joseph Alley in the right side, and then shot Andrew.

One of the balls entered a little to the right of the lower portion of the spinal cord, the other grazed the back of the neck. A *post mortem* disclosed that it had entered the bowels and produced internal hemorrhage and caused his death that afternoon.

After Joseph and Andrew were both wounded, Joseph made his way back to the office and got a revolver and attempted to follow defendant, but it was taken from him,

and he soon succumbed to his wound. The surgeons found the ball had punctured his intestines six times and they stitched them, thus saving his life. Immediately after firing the third shot defendant left the building.

John Glashen testified he saw defendant come out of the store of the Alley Brothers immediately after the firing with his revolver in his hand. He jumped out of the door on the sidewalk, and the next jump he landed in the road, and ran southeast until he got south of the furniture store and ran into John Alley's store. Witness and the constable, Harvey Whan, went to Alley's store to arrest defendant. When they got there they saw defendant and his brother George going west. They headed them off and arrested defendant. The constable searched them and found a revolver on George Kindred, with three chambers empty and two loaded. It was 32 calibre.

Defendant offered a number of witnesses to prove his good character and it was well established.

He testified in his own behalf. His account of the difficulty is substantially as follows: On the day in question he went into the deceased's store to buy an ax and told Mr. Andrew Alley, the deceased, that he wanted to buy an ax. The deceased told him that he had to settle an old account first, and defendant told deceased that he didn't owe him anything, when the deceased called him a ———— liar. Andrew was sitting in the corner at his desk. They commenced calling me names, and I commenced backing out and told them I would go out, and they commenced calling me names, said I was dishonest and wouldn't pay my debts, and Joe and Andrew started towards me with their hands in their pockets. Andrew told me to go out and I told him to leave me alone, that I would go out; but they just kept coming. The reason why I went out this way was, they had been calling me names and I was afraid to turn my back to them. They had their hands in their pockets and they

were about eight feet from me. Andrew called me a ——— of ——— and Joe kicked at me and glazed my leg right there, and the moment Joe kicked I fired. I don't remember how many times I shot, but Andrew had his hand in his pocket and I thought he was going to kill me. I thought Andrew had a gun in his pocket when I saw him there with his hand in his right hip pocket.

On being cross-examined the defendant could not tell where he had the pistol or whether he had it when he went to Mercer, but stated that he generally carried it in his coat pocket, but didn't remember whether he had it in his coat pocket that day or not, nor could he remember whether he had it in his right front pant pocket. When asked as to whether or not he had his hand on his pistol when he went into the store, he stated that he could not remember, nor could he tell whether or not he had his hand on his pistol when he passed the stove where the gentlemen who had previously testified in the case were sitting. In fact, he didn't remember where he had the pistol at any time until after he had fired the three shots. He didn't remember whether he told the deceased when he commenced to show him his account that he didn't settle his accounts that way, nor did he remember saying to the deceased that he, deceased, didn't pay his debts. Nor did he remember Joe's approaching him and asking him if he was looking for trouble. Nor could he tell as to whether he told Joe that he could whip any Alley of the name, and when asked as to why it was that he could remember about the ax, and not remember what was said by him about whipping any of the family he replied there were some things that he could remember and some he could not.

Other facts may be noted in the opinion.

I. The indictment is assailed as insufficient for the reason that it fails to charge the wounding was felonious and deliberate.

Omitting caption the indictment was in these words:

"The grand jurors for the State of Missouri, summoned from the body of the inhabitants of Mercer county, being duly impaneled, sworn and charged to inquire within and for the body of the county of Mercer aforesaid, on their oath present and charge that Peter Kindred, at Mercer county, Missouri, on the fifth day of February, 1898, in and upon one Andrew A. Alley, in the peace of the State there being, feloniously, willfully, deliberately, premeditatedly and of his malice aforethought, did make an assault, and that the said Peter Kindred, a certain pistol then and there charged with gunpowder and leaden balls, which said pistol he, the said Peter Kindred, in his hands then and there had and held, then and there feloniously, willfully, deliberately, premeditatedly, and of his malice aforethought, did discharge and shoot off, to, against and upon the said Andrew A. Alley, and that the said Peter Kindred, with the leaden balls aforesaid, out of the pistol aforesaid, then and there by force of the gunpowder aforesaid, by the said Peter Kindred discharged and shot off as aforesaid, then and there feloniously, willfully, deliberately, premeditatedly, and of his malice aforethought, did strike, penetrate and wound him, the said Andrew A. Alley, giving to him, the said Andrew A. Alley, in and upon the lower part of the back and through the lower part of the abdomen and bowels of him the said Andrew A. Alley, one mortal wound of the depth of six inches and of the breadth of one-half inch, of which mortal wound he, the said Andrew A. Alley, languished and languishing did live for the space of forty minutes, when of the said mortal wound the said Andrew A. Alley, on the said fifth day of February, 1898, at the county aforesaid, died. And so the jurors aforesaid, upon their oaths aforesaid, do say: That the said Peter Kindred, him the said Andrew A. Alley, then and there by the means

aforesaid, at the county aforesaid, on the day aforesaid, feloniously, willfully, deliberately, premeditatedly, and of his malice aforethought did kill and murder; against the peace and dignity of the State."

It clearly appears that the indictment is not obnoxious to the criticism of counsel. It specifically charges that the assault was felonious, willful, deliberate, premeditated and with malice aforethought, with a certain pistol charged with gunpowder and leaden balls; that the defendant then and there feloniously, willfully, deliberately, premeditatedly and of his malice aforethought did discharge and shoot off, said pistol, to, against and upon the said Andrew Alley; that the defendant with the leaden balls aforesaid out of the pistol aforesaid, then and there, by the force of the gunpowder aforesaid, discharged and shot off as aforesaid, then and there feloniously, willfully, deliberately, premeditatedly and of his malice aforethought, did strike, penetrate and wound him, the said Andrew Alley, giving to him, the said Andrew Alley in and upon the lower part of the back and through the lower part of the abdomen and bowels of the said Andrew Alley one mortal wound of the depth of six inches and of the breadth of one-half inch.

No more certain and specific charge of a deliberate and felonious wounding is to be found in the well considered precedents in criminal pleading.

It fully measures up to the standard approved by Chitty in 3 Chitty's Criminal Law, margin page 752, and Wharton's Precedents of Indictments and Pleas, 117a and 117b. [State v. Snell, 78 Mo. 240; Com. v. Costley, 118 Mass. 1; State v. Coleman, 5 Porter (Ala.) 32; Kelly's Crim. Law, sec. 474; State v. Thomas, 99 Mo. 235; State v. Herrell, 97 Mo. 105; State v. Steeley, 65 Mo. 218; State v. Green, 111 Mo. 585; 2 Bishop's New Crim. Proc., sec. 541, note 1.]

II.   Counsel strenuously urged that the court erred in denying defendant a change of venue.   After a careful

reading of the evidence offered by defendant and that in opposition by the State we see no reason for interfering with the decision of the circuit court. It is significant that no point is made in this court that any juror on his *voir dire* disclosed any such prejudice as would disqualify him. It thus appears that defendant was tried by a jury against whom no charge of partiality is made, a somewhat unusual occurrence in this court.

III. It is also insisted that the application for a continuance was improperly overruled.

A short rehearsal of the facts will establish that the homicide occurred on the fifth day of February. The indictment followed in March, and from the fact that defendant issued his subpoenas for the adjourned term in May it must be assumed that the arraignment was had in March. Advised that his trial would occur May 23, defendant took no steps to have the witness subpoenaed until May 12. In the meantime, he alleges, the witness on or about the first of May left Mercer county and was then in Oklahoma Territory. The affidavit does not disclose the address of the witness in Oklahoma. It does not appear that he has become a resident of said territory nor that he went there with a view to a permanent residence. For aught that appears to the contrary the witness might have had no intention of settling in said territory. Being without the jurisdiction of our courts he might feel under no obligation to tarry there until a commission should issue, and notices be served. It was entirely problematical where or when this witness could be found.

For this reason and because we think the circuit court might well have held that no diligence was shown in trying to get service on this witness, before he left Mercer county, we see no reason for interfering with the discretion exercised by the trial court. At the time the affidavit was filed the

defendant had not indicated that he expected to rely on self-defense. In State v. Pagels, 92 Mo. 300, and State v. Bryant, 93 Mo. 273, it was held that it was incumbent on the defendant to show the materiality of the absent testimony by disclosing the nature of the defense so that the court could determine its competency and relevancy. For this additional reason we think no error was committed in denying the continuance. [State v. Cochran, 147 Mo. 504.]

Looking now over the whole evidence, that of defendant and the other eye-witnesses, we can say that there is not the least probability that the testimony of the absent witness if given as indicated would have affected the result nor ought it to have changed the verdict, and no injury resulted by refusing the continuance. [State v. Worrell, 25 Mo. 205.]

IV. Learned counsel challenges the fourth instruction given by the court, in these words:

"4. The court further instructs the jury that he who willfully, that is, intentionally, uses upon another at some vital part, a deadly weapon, such as a loaded pistol, must, in the absence of qualifying facts, be presumed to know that the effect is likely to produce death, and knowing this, must be presumed to intend this which is the probable consequence of such an act, and, if such deadly weapon is used without just cause or provocation he must be presumed to do it wickedly and from a bad heart; if therefore you find and believe from the evidence that the defendant took the life of Andrew A. Alley, by shooting him in a vital part with a pistol with manifest design to use such weapon upon him with sufficient time to deliberate and fully form the conscious purpose to kill and without sufficient or just cause or provocation, then such killing is murder in the first degree. And while it devolves upon the State to prove the willfulness, deliberation, premeditation and malice aforethought,

all of which are necessary to constitute murder in the first degree, yet these need not be proved by direct evidence, but may be deduced from all the facts and circumstances attending the killing, and if you can satisfactorily and reasonably infer their existence from all the evidence, you will be warranted in finding the defendant guilty of murder in the first degree."

This instruction in this exact form was given in State v. Talbott, 73 Mo. 347. It was attacked in that case and was unanimously approved by this court. In State v. Herrell, 97 Mo. 105, it was again approved by this court as "sufficiently clear." Having often met the sanction of this court and announcing as it does a correct statement of the law, no error was committed in giving it. [State v. Foster, 61 Mo. 549.]

V. The remaining instructions fully covered every proposition of law involved in the case, unless as defendant contends an instruction should have been given defining manslaughter in the various degrees.

Any degree except the fourth is out of the question. There is not a scintilla of evidence upon which an instruction as to any other degree could be based. Should the court have instructed on manslaughter in the fourth degree? This claim must rest entirely on the defendant's own testimony. The court confined its instructions to murder in the first and second degrees and self-defense.

All the evidence shows that neither Andrew Alley, the deceased, nor Joseph Alley his brother, was armed with any weapon. No witness saw either have a weapon and when both were shot down by defendant, their clothing was removed and no weapon was found on their persons. Joseph Alley demonstrated that he had no arms by his conduct in going to the desk after he was shot, to get a revolver which was kept there. It can not be doubted that if he had been armed he would have returned the fire when

defendant shot him and his brother, but defendant says, "Andrew told me to go out (of the store) and I told him to leave me alone, that I would go out, but they just kept coming, the reason I went out this way (that is backing out sideways), was, they had been calling me names and I was afraid to turn my back to them; they had their hands in their pockets and they were about eight feet from me. Andrew called me a son of a bitch and Joe kicked at me, and glazed my leg right there, and the moment Joe kicked I fired. I don't remember how many times I shot, but Andrew had his hand in his pocket when I saw him there, with his hand in his hip pocket."

In other words, having armed himself with a deadly revolver and sought out his victim, he would have the court and jury believe he shot and killed deceased because he apprehended deceased was going to kill him, simply because he had his hand in his pocket, but making no other demonstration.

There is no evidence in this story of a sudden combat; not a word of passion suddenly aroused. It is on the contrary the story of one completely master of himself and alive to an impending danger who shoots and shoots only according to his evidence, to save his own life. If believed by the jury it does not make a case of perfect self-defense. No pretense of any battery is to be found, save in the incredible story that Joseph kicked at him and barely glazed his leg when eight feet distant. His own evidence shows they were eight feet from him when he fired, and the medical witnesses testify there was no powder burns about the entrance of the bullets. The defendant's evidence collides with the admitted physical facts.

On the other hand the evidence for the State overwhelmingly establishes that defendant armed himself with a deadly weapon and with his hand on his pistol in his pocket went into the business house of the deceased, notified him

he had come "to settle with him," not by paying a just debt, but by "fighting it out." When the fight was declined he indulged in further challenges and abusive epithets until he was ordered out of the store. As he backed out of the store he suddenly draws the revolver and shoots both of the proprietors. No violence had been offered to him and the proprietors were violating no privilege of defendant when they directed him to leave their store in which he was committing a breach of the peace. Had defendant succeeded in getting up a combat it would have been the result of his preconcerted design to wreak his vengeance and not the result of a sudden falling out.

Neither is there any doubt as to the character of the weapon used or the previous preparation. Russell on Crimes (9 Ed.), p. 783, says, "It has been shown that the most grievous words of reproach will not free the party killing from the crime of murder, if upon such provocation a deadly weapon was made use of, or an intention to kill, or to do some great bodily harm was otherwise manifested."

This statement of the law was expressly approved in State v. Wilson, 98 Mo. 440, to which we are cited by counsel. Here the deadly weapon is used and the intention to kill is manifest not only by the previous preparation but by the explicit testimony of defendant himself. The case was one of murder in the first degree.

The court doubtless instructed on self-defense upon defendant's own evidence, as the proof was overwhelming the other way. Our conclusion is that there was no evidence of murder in the second degree or manslaughter in any degree in the case, and the court correctly refused to instruct upon manslaughter. Having instructed on murder in the second degree and self-defense, of course the defendant can not complain.

VI. Finally we are asked to reverse the judgment because the court instructed the jury that drunkenness was no excuse or justification for crime. It is urged that the defendant, unused to strong drink, of good and peaceable habits, committed this rash deed and terrible act because his reason was overthrown by the liquor he had drunk. We are not convinced that the rule so long established in this State and approved as late as the Duestrow case should be weakened by any departure therefrom in this case.

The facts justified the instruction and there was no error in giving it.

The guilt or innocence of the defendant was fairly submitted to the jury and their verdict must stand in the absence of error which we have been unable to find. The judgment is affirmed, and the sentence of the law ordered to be executed. SHERWOOD and BURGESS, JJ., concur.