STATE OF MISSOURI, Respondent, v. CLARENCE GRUBBS, Appellant.— No. 40981.—214 S. W. (2d) 435.

Division Two, November 8, 1948.

No attorney of record for appellant.

*J. E. Taylor*, Attorney General, and *C. B. Burns*, Assistant Attorney General, for respondent.

324

[436] TIPTON, P. J.—The appellant was convicted of murder in the first degree in the circuit court of Jackson County and his punishment assessed at life imprisonment in the state penitentiary.

The appellant has filed no brief in this court. We will therefore examine the record for errors alleged in his motion for a new trial. However, he has written a letter complaining that the bill of exceptions is incorrect in several respects. The bill of exceptions was approved by the trial court and we are bound by what it contains. Nevertheless, we have compared what appellant contends should have been in the bill of exceptions with what it actually shows and find that the variances are of an immaterial nature.

Assignments numbers 9 and 10 in appellant's motion for a new trial state that the court erred in overruling his demurrers to the evidence.

On March 4, 1946, Wilma Edwards, the desk clerk of the Cortez Hotel in Kansas City, Missouri, Leonard Long, the deceased, and Inez Morowitzke were in the lobby of that hotel when the appellant came down from his room to the lobby. This was about 10:30 or 11:00 A. M. of that day. As he passed Long he said, "Why did you say that? The next time you say that I will hit you in the mouth. What is the idea of making some statement about the mail every time I walk into the lobby? If you do it again I will kill you." Appellant then struck deceased twice in the face. Deceased got up and asked appellant to remove his glasses, which he did, and placed them on a piano. Deceased got the appellant down and rubbed his face on the floor until the appellant said he had "had enough." Deceased then resumed his seat and appellant picked up his glasses and went upstairs.

Appellant was in and out of the hotel later during the day. About noon both appellant and deceased were seated in the lobby but did not speak to each other. Between 2:00 and 2:30 P. M. appellant went upstairs but came down a few minutes later. Deceased, Inez Morowitzke and Wilma Edwards were in the lobby at that time. When appellant reached the bottom of the stairs he started shooting at deceased. At about the same time he said to deceased, "I will get you this time," "This is it" or "This is the end." Appellant fired three shots at deceased and one at Inez Morowitzke but the bullet went over her head.

Appellant then went to a police station and gave himself up. He made an oral statement to two police officers in which he said that he and deceased had had a fight, that deceased had hit him and he made up his mind he would kill him. He went up to his room and got his gun but it would not work. He then came down in the lobby and later went out and got a bottle of whiskey, then returned to his room. This time he got the gun to work and he again went to the lobby and saw deceased sitting there. He started shooting at deceased and fired at a woman running upstairs who he thought was Miss Edwards. Deceased died from the gunshot wounds the next day.

The defense was insanity. Dr. Wilmer L. Allison had treated the appellant in December, 1941, for paranoia and delusions of persecution at a mental institution in Fort Worth, Texas, and it was his opinion that appellant was incapable of distinguishing right from wrong. There were other witnesses to support his defense of insanity.

The demurrer filed at the close of the state's evidence was waived when the appellant introduced evidence in his own behalf. State v. Cutter, 318 Mo. 687, 1 S. W. 2d 96.

The demurrer at the close of the case was properly overruled. The evidence if believed by the jury was sufficient to establish murder in the first degree. At the trial appellant's attorneys admitted that deceased died from a gunshot wound inflicted by appellant. The law is well settled in this state that one who takes the life of another by intentionally shooting him in a vital part with a gun, with sufficient time to deliberate and form the conscious purpose to kill, without sufficient or just cause or provocation, is guilty of murder in the first degree. Section 4376, R. S. Mo., 1939. State v. Kindred, 148 Mo. 270, 49 S. W. 845. The evidence in this case comes within this rule of law and the [437] trial court properly overruled appellant's demurrer at the close of all the evidence in the case.

Assignments numbers 5 and 6 state that the court erred in instructing the jury on first degree murder for the reason that the state failed to prove the requisites of murder in the first degree. We have just held that the evidence was sufficient to sustain a charge of murder in the first degree. There is no merit in this contention. Moreover, the record shows "that Instruction No. 1 is the instruction

offered in behalf of the defendant by the defendant's counsel and is by the Court marked 'Given'.'' After requesting this instruction, the appellant is in no position to urge that it was error to give it.

■ Assignments numbers 1 and 2 in appellant's motion for a new trial are as follows:

''1. The verdict of the jury was against the weight of the evidence.

''2. The jury was not properly instructed as to the law and the evidence.''

We have repeatedly held that these two assignments of error are too general to preserve anything for our review as they do not comply with Section 4125, R. S. Mo., 1939. State v. Kennon, 123 S. W. 2d 46 and cases cited therein.

■ Assignments numbers 7 and 8 complain of the court's refusing two requested instructions, one defining reasonable doubt and the other defining the legal definition of mental delusions. These two assignments do not in any way point out why such refusal was error. Before the alleged error in refusing to give requested instructions can be reviewed by this court the assignments of error in the motion for a new trial must state the reason why the refusal to give the instructions was error. Section 4125, supra; State v. McGee, 336 Mo. 1082, 83 S. W. 2d 98; and State v. Vigus, 66 S. W. 2d 854.

■ Assignments numbers 3 and 4 are as follows:

''3. The court erred in permitting defendant to go to trial before he had advised the Court that his attorneys were not of his choice and that they did not understand his defense.

''4. The court erred in permitting defendant's trial to proceed over defendant's protest that his attorneys were not of his choice and that they were not presenting the defense he wanted presented.''

The appellant was arraigned on June 13, 1946, and he entered a plea of not guilty. The appellant did not have an attorney and at his request the court appointed three lawyers to represent him. There is nothing in the record to show that appellant was dissatisfied with the attorneys appointed for him before the trial was started. He did not complain about these attorneys to the trial judge or tell him that they were not presenting the defense that he wanted presented. It is true during the trial the following occurred:

''Mr. Hill: If the Court please, I would like to call Mr. Clarence Grubbs to the witness stand.

''The Defendant: Your Honor, as my lawyers have explained to this jury, I do not—

''Mr. Gilwee: (Interrupting) All right, now. If he is going to take the stand, all right; if he is not going to take the stand I object to any speech for the reason it would be voluntary and self-serving.

''Q. (By the Court): Are you going to take the stand, Mr. Grubbs?

"The Defendant: No, sir, Your Honor, not with these attorneys."

"But there is no showing that appellant had any other defense. Cases of murder without any real defense are not uncommon. If appellant had no other defense, should his counsel be charged for the failure of the only one available to him? Certainly not. Moreover, defending on a wrong theory is not evidence of incompetency. Sayre v. Commonwealth, supra. If appellant had any true defense it was his duty to disclose it to his counsel, and if the latter was unwilling to present it, to appeal to the court to assign him counsel who would. He cannot wait until after his conviction and expect to have another trial on another theory of defense by shifting [438] the blame for the one which failed upon his counsel." State v. Jukich, 242 P. 590, l. c. 597.

These two assignments of error are without merit.

Having disposed of all the assignments of error that were in appellant's motion for a new trial, it follows that the sentence and judgment of the trial court should be affirmed. It is so ordered. All concur.