STATE OF MISSOURI, Respondent, v. ROBERT BURNETT, Appellant, No. 45052—293 S. W. (2d) 335.

Court en Banc, July 9, 1956.
Rehearing Denied July 31, 1956.

Joseph Noskay for appellant.

John M. Dalton, Attorney General, and Grover C. Huston, Assistant Attorney General, for respondent.

1064

[337] DALTON, J.—Defendant has appealed from a conviction and sentence for murder in the first degree, where the death penalty was imposed.

The offense was alleged to have been committed in the City of St. Louis on December 20, 1954. An indictment charging appellant and one Sterling Quinn with murder in the first degree of one Abe Levitt was returned and filed on February 4, 1955. Thereafter, ap-

pellant was arraigned and entered a plea of not guilty. Appellant was granted a severance and a trial was had before a jury. On April 13, 1955, the jury returned a verdict of guilty of murder in the first degree as charged in the indictment, and fixed the punishment at death. A motion for a new trial was filed and overruled, and appellant was, thereafter, on June 6, 1955, duly sentenced to suffer death by the administration of lethal gas.

On this appeal the appellant has not favored us with a brief and it is necessary for us to examine the assignments of error in his motion for a new trial. Supreme Court Rule 28.02; State v. Pierce (Mo. Sup.); 236 S.W. 2d 314.

The evidence shows that Abe Levitt was shot and killed by appellant while appellant was attempting to perpetrate a robbery. The cause of death was shown to be a "bullet wound in left chest." Levitt owned and operated a grocery store on the southwest corner of the intersection of Maffitt and Newstead avenues in the city of St. Louis. Appellant and Sterling Quinn entered the store about 7:30 p.m. on the evening of December 20, 1954. At that time Abe Levitt, Robert Farmer and his grandson Michael and a customer, Miss Fredia Tumpkins, were in the store. Appellant carried a 7.65 millimeter semi-automatic pistol of German make, which used .32 caliber Remington shells. Appellant subsequently described the gun as a .32 automatic. Appellant advised Levitt that it was a holdup and demanded Levitt's money and ordered him to open the cash register. Levitt refused and an extended argument followed. Appellant finally backed Levitt against the basement door and shot him in the chest. Appellant and Quinn then ran from the store and left in an automobile which had been parked in an alley near the store. Robert Farmer recognized appellant by his voice and testified that both Quinn and appellant had been in the store on previous occasions. Quinn was not masked, but appellant had a dirty pocket handkerchief over the lower part of his face.

Appellant and Quinn were subsequently arrested at the Sylvan Beach Airport and, on December 26, 1954 appellant gave the police officers a written statement, in question and answer form, concerning the attempted robbery and murder. The statement was identified, offered and received in evidence. Appellant said he had been residing with Quinn at 5175 Kensington avenue and that they owned a gray 1939 Buick automobile in partnership. About 3:00 p.m., on the afternoon of December 20, 1954, they planned a holdup, but had not located a place They got lost while driving around looking for a suitable place, but finally drove by the Levitt store and appellant stated that the other stores were closed. Quinn said "Let's go in and get 'em." The automobile was parked in an [338] alley and the two entered. Both were carrying guns, appellant had the ".32 automatic" with the safety off, while Quinn had "a cap gun, it was in no good

condition.'' Appellant had taken a bloody handkerchief off of his sore hand and had tied it over his face. When appellant entered the store he saw the owner of the store, the old man (Farmer), and the boy. Appellant further stated the facts as follows: ''I went in the store and went to the back and the man asked what I wanted and I told him, 'I want the money;' just like that. And he said, 'You don't get nothing here.' I said, 'Why?' He said, 'because I ain't going to give you none.' He said, 'You going to shoot me?' I said 'I hope I don't have to.' He said, 'You want to kill me?' And I said, 'I don't want to.' And he reached for my pistol and I got out of the way of him and stepped back and shot him. Q. And then what happened? A. I ran into the alley and got in the car. * * * Q. What was the conversation he had with you again, Robert? A. I told him I wanted some money, 'Open the cash register.' He said, 'You ain't going to get nothing here.' He said 'You won't shoot me, you don't want to kill me, do you?' I told him, 'No, I hope I don't have to.' And he run around there and went to grab my pistol and he made a miss-grab and I stepped back and shot him. * * * Q. You pulled away and shot him? A. Yes. * * * How long would you say you were in there, Robert? A. About twenty-five or thirty-five minutes. Q. In the store? A. Yes. Q. I don't think you could have been there that long? A. We argued. Q. How long did you argue? A. About ten minutes. I don't know how many minutes—it was quite a while * * * Q. Did you get any money from Mr. Levitt? A. No, sir. Q. But you went there with the idea of holding him up and getting money? A. Yes. Q. Robert, had you been drinking prior to that time? A. No, Sir.''

In a further written statement appellant said he told the police that he had left the city after the shooting and had taken the gun to his father's home at Wyatt, Missouri. He gave certain officers permission to get the gun. The officers flew down and recovered the gun and others and returned that afternoon. The guns were then exhibited to appellant and he identified the gun he had used to shoot Mr. Levitt. He said he knew ''it by the handles.''

Other evidence on behalf of the state tended to show that police officers arrived at the Levitt store shortly after the attempted robbery and shooting. Mr. Levitt was taken to a hospital, but he was dead on arrival and a few minutes thereafter his body was removed to the city morgue, where an autopsy was performed and the bullet removed from the body. In the store where the shooting occurred a discharged .32 caliber Remington shell was found and the shell and the mentioned bullet were both delivered to a ballistic expert, together with the semi-automatic pistol recovered by the police and identified by appellant as the gun he had used to shoot Mr. Levitt. The expert fired a test shot from the gun and recovered both the shell and the bullet and then compared, under a microscope the marking on the two shells and the marking on the two bullets. He testified that both

shells had been fired in and ejected from the same gun and that the two bullets had been fired from the same gun. He also testified that it was impossible for the rifling in two guns to be exactly the same.

Appellant testified in his own behalf at the trial, as follows: [339] "When I went in the store I walked to the back. When I walked to the back Mr. Levitt walked out from behind the meat counter and he asked me what for me. I told him this was a holdup. The Court: You what? A. I told him this was a holdup. He said, 'I am sorry, I ain't going to give you nothing, get on out of my store.' And he grabs me. When he grabs me, me and him was tussling over the pistol. I had my gun in my hand. He said, 'ain't nobody going to hold me up.' We tussled around and my elbow hit the wall and the pistol went off." On cross-examination appellant testified: "Q. Did you go in that place intending to hold up Mr. Levitt? A. In that place to .... Q. Did you intend to go in there? A. Yes, I went in to hold him up, yes, sir. The Court: How is that? A. I went in to hold him up. * * * Q. There is no question in your mind that you carried the pistol in there with the idea that you would be able to carry out the holdup, isn't that correct? A. Yes, sir. * * * Q. In other words, you carried the pistol in the idea that you would be able to make him do whatever you wanted him to do in so far as handing over that money, isn't that right? A. That is right. Q. The pistol was also taken there with the idea that by having a pistol you would be able to make an escape with the money? A. That is right." Appellant was 20 years old at the time of the trial.

Some of the thirty assignments in the motion for a new trial refer to matters which, if they occurred, are not shown by the record. We are bound by the record presented for review and, therefore, assignments which are based upon matters not shown by the record cannot be considered or determined. State v. O'Brien (Mo. Sup.), 249 S.W. 2d 433, 434(7); State v. Quilling, 363 Mo. 1016, 256 S.W. 2d 751, 754(5); State v. Marlin (Mo. Sup.), 177 S.W. 2d 485, 487(2). Certain other assignments, as we shall see, wholly fail to comply with Supreme Court Rule No. 27.20 which, in part, requires that "a motion for a new trial shall be in writing and must set forth in detail and with particularity, in separate numbered paragraphs, the specific grounds or causes therefor."

It is contended that the court erred in failing to sustain defendant's motion for a judgment of acquittal at the close of the State's case, and erred in failing to sustain a similar motion at the close of the entire case, because "there was no evidence of wilful, deliberate, premeditated and with malice aforethought homicide." The record shows that appellant's counsel requested a judgment of acquittal at the close of the State's case. The request was denied. Appellant thereafter testified in his own behalf and the request for a judgment of acquittal was not renewed at the close of all the evidence. The

motion tendered at the close of the State's case was intended to present the issue of whether as a matter of law the evidence offered by the State was sufficient to support a conviction under the charge in the indictment. Supreme Court Rule 26.10. On the record presented, the motion was correctly ruled. Although, no motion for judgment of acquittal was offered at the close of all the evidence, this failure would not foreclose the question as to whether there was any substantial evidence to support the verdict, if such question had been properly raised in the motion for a new trial, but the matter has not been raised. State v. Ellis (Mo. Sup.), 159 S.W. 2d 675, 676(2); State v. Clark, 353 Mo. 470, 182 S.W. 2d 619, 622(6). However, on this record the evidence, as we shall see, was amply sufficient to sustain the verdict of the jury.

Section 559.010 RSMo 1949, provides: "Every murder which shall [340] be committed by means of poison, or by lying in wait, or by any other kind of willful, deliberate and premeditated killing, and every homicide which shall be committed in the perpetration or attempt to perpetrate any * * * robbery * * * shall be deemed murder in the first degree." Where the theory of the state is that the crime is murder in the first degree, because committed in perpetrating or attempting to perpetrate a robbery, the state must of course prove by direct or circumstantial evidence and beyond a reasonable doubt every element of the offense before the jury may inflict the death penalty. State v. Conway, 351 Mo. 126, 171 S.W. 2d 677, 681(9). On the record presented here there was substantial evidence to authorize the submission of the case to the jury. State v. Meadows, 330 Mo. 1020, 51 S.W. 2d 1033, 1037 (9-12); State v. Morefield, 342 Mo. 1059, 119 S.W. 2d 315, 316(1); State v. King, 342 Mo. 1076, 119 S.W. 2d 322, 325 (4). The evidence heretofore reviewed fully supports the verdict of the jury. State v. Moore, 326 Mo. 1199, 33 S.W. 2d 905, 906; State v. Kauffman, 335 Mo. 611, 73 S. W. 2d 217, 220; State v. Mabry, 324 Mo. 239, 22 S.W. 2d 639, 642(9).

■ Error is assigned on the verdict as being "against the weight of the evidence." The assignment fails to comply with Supreme Court Rule 27.20 and presents nothing for review. State v. McHarness (Mo. Sup.), 255 S.W. 2d 826, 830(12); State v. Grubbs, 358 Mo. 323, 214 S.W. 2d 435, 437(7).

■ Error is assigned on the court "not considering the facts of the case in determining the punishment" and "in not taking the responsibility of attempting to assess the punishment in the event of a plea of guilty, rather than following the recommendation of the circuit attorney." These assignments are without support in the record and nothing is presented for review. The record does show certain remarks by the court and counsel from which we infer that an effort may have been made to determine what punishment the court would be disposed to impose if appellant entered a plea of guilty, but the

record is wholly inadequate for a determination of the questions presented.

Error is assigned on the court "not disqualifying himself in this case when he expressed the opinion that there should be more death sentences in robbery cases" and "when he said 'It looks like the Public Defendant is trying to help these boys.'" No such statement or expressions of opinion appear in this record and the assignments may not be considered.

Error is assigned on the courts "prejudicial attitude to the defendant and defendant's counsel throughout the case" and "in harrassing and hurrying defendant's counsel throughout the trial." No such matters appear from the record and nothing appears therein to sustain an inference or conclusion that any such matters transpired at the trial.

Error is assigned on the court "not sustaining defendant's oral motion for a change of venue", "in not permitting the defendant to file a change of venue", and "in not granting to the defendant time in which to file a motion for a change of venue." On the record presented no offer to file an application for change of venue was made or refused. The record does show that on Thursday, April 7, 1955 the cause was assigned to Division No. 12 for trial. On Monday, April 11, 1955, defendant appeared with the "Public Defender" and was granted a severance and, before the impaneling of the jury began, counsel orally moved the court "to disqualify himself from serving as trial judge of this case for reason of bias and prejudice of the court." The oral motion was overruled and counsel stated it was 11:25 a.m. and asked time until 2:00 p.m. "to prepare a change of venue." Counsel said the court had stated that "what we have to do in this type of case is to give death penalties." In reply the court indicated that in chambers that morning (apparently while considering [341] a possible plea of guilty) he had remarked "to the effect that the punishment must be extreme in these cases if we want to stop this series of holdups." The court further stated: "It might be prejudicial if it (the punishment) is left with me, if he pleaded guilty and left it to the court; as I stated before, it is up to the jury to fix punishment." The court overruled the oral application for time "to prepare a motion for change of venue" apparently on the theory urged against it by the state that the application for time was not timely made. The jury was not sworn to try the case until 9:30 a.m. of the following day. The record presented for review fails to show either that the judge was prejudiced or that he had been disqualified as provided by Supreme Court Rule 30.12, or that any proper application in writing was made as provided in Supreme Court Rule 30.02. These proceedings were not in the presence of the jury. No prejudicial error appears from the record to support any of these assignments.

█ · Error· is·assigned on the court· "allowing evidence during the course of the trial of firearms taken from defendant's· home, other than the one allegedly used ·in the perpetration ·of the· crime."· The matter complained ·of appeared in one of appellant's statements to the police, however, the statement was admitted without objection. The ·statement contained the following questions and answers: "Q. We are showing you three guns, one ·12 gauge shotgun, one .25 caliber ·automatic, and one .32 automatic, that the officers mentioned ·above recovered from the home of your father in Wyatt, Missouri, will ·you point to the one that you used in this shooting? ·A. ·Yes, sir.· It was this one.· Q. Are ·you ·sure this is the gun? ·A. ·Yes, ·I ·know it by the handles and ·that it is just the gun." There was other evidence concerning the ·two automatics ·which were brought back· from ·appellant's home in order to determine which had been used by appellant in the commission of the crime. This· evidence also came ·into the record ·without objection. The alleged error in the admission· of the ·evidence has not been· preserved for review. State v. Campbell· (Mo. Sup.), 262 S.W. 2d 5, 6(2); State v.·Nettles (Mo. Sup.), 280 ·S.W. 2d 61, 63(2); Supreme Court Rule 28.01; Section 510.210 RSMo 1949.

· █ Error is assigned on the giving of·Instructions ·1 and 2 on·the ground that the word· "feloniously" is omitted in paragraph ·three (3) of Instruction· No. 1, in the definition of murder ·in ·the first ·de-·gree, also, in the second to the last paragraph of Instruction· No·1 dealing with murder in the first ·degree and, also, in paragraph one (1) of Instruction No. 2 in submitting murder in the first· ·degree while attempting to perpetrate a robbery. It was unnecessary· to·use the word "feloniously" in the instructions since the instructions ·sub-mitted a finding of all facts necessary· to constitute murder ·in ·the first degree and all facts necessary to constitute a felony and establish that in law the acts submitted were· feloniously done. ·State v. Hille-brand, 285 Mo. ·290, 225 S.W. 1006, 1007(1); State v: Frost (Mo. · Sup.),· 289 S.W. 895, 897(5); State v. Warden, 331 Mo. 566, 56 ·S.·W. 2d 595, 598 (5); State v. Helton, 234 Mo. 559, 565, 137 S.W. 987.

█ Error is further assigned on the giving of Instruction No.· 1, because in the last paragraph it used the words, you *will* assess his punishment at death, instead ·of you *may* assess his punishment· as ·death. The instruction closed with these words: "If you return· a ·verdict of murder in the· first degree, you will assess his punishment ·at death, or by imprisonment in the penitentiary· for and during. the ·remainder of his· natural life." The words used ·closely follow· the ·words of the statute, Sec. ·559.030 RSMo 1949 which· fixes the punish-ment for murder in the first degree and which provides "·* ·* *·; and ·persons convicted of murder in the first degree shall [342]· suffer ·death, or be punished by·imprisonment in the penitentiary. during ·their natural lives * * *." The words used in the·instruction .con-

form to the statute and the instruction is not erroneous but is in proper form.

■ Error is assigned on the giving of Instruction No. 1 because, in fixing the time of the offense, it used the words "at any time prior to the finding of the Indictment herein" and because it did not inform the jury as to the date of the finding or filing of the indictment. The assignment is without merit because the instruction recited: "The State of Missouri, by the indictment in this case, which was filed in this court on the 4th day of February 1955, charges * * *." Further the date of the offense is submitted by Instruction No. 2 as "on or about the 20th day of December, 1954," which was prior to the stated date of the filing of the indictment. Instructions must of course be read together and are sufficient if they properly present the law of the case when so considered. State v. Sapp, 356 Mo. 705, 203 S.W. 2d 425, 430(5).

■ Error is assigned on the giving of Instruction No. 3, in that in paragraph two (2) the court "did not correctly define attempted robbery." The assignment is insufficient because it fails to point out in what respect the definition of attempted robbery is erroneous. Supreme Court Rule 27.20; State v. Weston (Mo. Sup.), 202 S.W. 2d 50, 53(9). However, in a case of this nature, it was not necessary for the court to define the term. See State v. Messino, 325 Mo. 743, 30 S.W. 2d 750, 761(19); State v. Bersch, 276 Mo. 397, 207 S.W. 809, 816(20). The assignment is further insufficient because Instruction No. 3 contains no definition of attempted robbery, but the term is correctly defined in Instruction No. 2. See Sections 560.120 and 556.150 RSMo 1949; State v. Scarlett (Mo. Sup.), No. 44855, 291 S.W. 2d 138 (not reported in the State Reports); State v. Bersch, supra.

■ Error is assigned on the giving of Instruction No. 2 on the theory that it "is outside the scope of the pleadings and allegations," the indictment having charged murder in the first degree using the terms "feloniously, wilfully, deliberately, premeditatedly and with malice aforethought," while Instruction No. 2 "instructs on the killing of a human being while attempting to perpetrate a robbery." There is no merit in the assignment. Section 559.010 RSMo 1949, provides that "every murder which shall * * * be committed in the perpetration or attempt to perpetrate any * * * robbery * * * shall be deemed murder in the first degree" and clearly it is the approved practice in this state to charge murder in the first degree in the usual language and then be permitted to prove that the homicide occurred during a robbery or attempted robbery, although that fact was not charged, and for such proof, in view of Section 559.010, to support the giving of an instruction such as Instruction No. 2 wherein the court instructed the jury, as follows: "Murder in the first degree is the killing of a human being wilfully, feloniously, deliberately,

premeditatedly and with malice aforethought, or the killing of a human being while attempting to perpetrate a robbery." The court further instructed the jury, in part, as follows: "* * * that if you find and believe from the evidence in this case beyond a reasonable doubt that the defendant, Robert Burnett, either acting alone or jointly with another or others, in the city of St. Louis, State of Missouri, on or about the 20th day of December, 1954, wilfully, deliberately, premeditatedly, and with malice aforethought, shot and wounded one, Abe Levitt, while attempting to perpetrate a robbery upon him, the said Abe Levitt, and if you further find * * *." See State v. Bradley, 361 Mo. 267, 234 S.W. 2d 556, 558(1); State v. Conway, supra, 171 S.W. 2d 677, 679(3); State v. White, 330 Mo. 737, 51 S.W. 2d 109, 112(1, 2); State v. Long (Mo. Sup.), 253 S.W. 729, 732(6); State v. Jackson (Mo. Sup.), 253 S.W. 734, 736(6); State v. Messino, supra, 30 S.W. 2d 750, 759(11); State v. Nasello, 325 Mo. 442, 30 [343] S.W. 2d 132, 136(1, 2). It is further established that in the absence of other evidence from which the jury can infer the elements, deliberation and premeditation, these and other constituent elements of murder in the first degree can be inferred from proof that the homicide was committed in the perpetration or attempted perpetration of robbery. In the case of State v. Bradley, supra, 234 S.W. 2d 556, 558(1) the court said: "* * * the proof that the homicide was committed in the perpetration of robbery was tantamount to proof of the constituent elements of the crime of murder in the first degree." And see State v. Cole, 354 Mo. 181, 188 S.W. 2d 43, 189 S.W. 2d 541; State v. Meadows, supra, 51 S.W. (2d) 1033, 1037(11); State v. Reese, 364 Mo. 1221, 274 S.W. 2d 304, 308(4).

Error is assigned on the giving of Instruction No. 4, dealing with the presumption of innocence and reasonable doubt, and containing the words: "but a doubt to authorize an aquittal on that ground ought to be a substantial doubt." It is argued that the word "substantial" has been perverted by common usage to mean a large amount or a great deal; and that it carried such meaning to the jury. There is no evidence in the record to support the claimed usage or meaning of the word "substantial." We cannot take judicial notice that the word has any such meaning or usage, or that the jury so understood the term. The instruction is in approved form and not erroneous on the ground claimed. State v. Hutsel, 357 Mo. 386, 208 S.W. 2d 227, 232(11, 12).

Error is assigned on the court's action in not instructing (1) on murder in the second degree; (2) on manslaughter; (3) on accident; and (4) on self-defense. These assignments present nothing for review since they fail to comply with Supreme Court Rule 27.20. An assignment which merely states that the court erred in giving a particular instruction, or in refusing to give a particular instruc-

1074

tion, or in refusing to instruct on a particular matter such as murder in the second degree have been held insufficient in not stating "in detail and with particularity" the specific grounds or causes of complaint in the motion for a new trial. State v. Harmon (Mo. Sup.), 243 S.W. 2d 326, 332(12); State v. Gaddy (Mo. Sup.), 261 S.W. 2d 65, 67(2); State v. Powell, 339 Mo. 80, 95 S.W. 2d 1186, 1189(4); State v. Grubbs, 358 Mo. 323, 214 S.W. 2d 435, 437(8). However, there was no evidence in the record to sustain the giving of instructions on any of these matters, because the state's evidence, confirmed by the testimony of appellant, tended to show the offense charged was committed in the perpetration of an attempted robbery. On the facts shown the jury could be authorized to find only one of two verdicts, namely, a conviction of murder in the first degree, or an acquittal. State v. Conway, supra, 171 S.W. 2d 677, 679(5); State v. Bradley, supra, 234 S.W. 2d 556, 563(21); State v. Jackson, 340 Mo. 748, 102 S.W. 2d 612, 617; State v. Adams, 339 Mo. 926, 98 S.W. 2d 632, 638(9). It was immaterial that the shot may have been fired unintentionally or by accident. State v. Hopkirk, 84 Mo. 278, 287; State v. Glover, 330 Mo. 709, 50 S.W. 2d 1049, 1053(1); State v. Meadows, supra, 51 S.W. 2d 1033, 1037(9); State v. Cole, supra, 189 S.W. 2d 541(2); State v. Bradley, supra, 234 S.W. 2d 556, 563(21). Likewise, there was no issue of self-defense. State v. Hart, 292 Mo. 74, 237 S.W. 473, 482(28); State v. King, 342 Mo. 1067, 119 S.W. 2d 322, 327(8); State v. Hamilton, 337 Mo. 460, 85 S.W. 2d 35, 37(4); State v. Kenyon, 343 Mo. 1168, 126 S.W. 2d 245, 249(3).

 The record shows that during the jury's deliberation they sent to the court the following question: "Your Honor: On the verdict of life imprisonment in the State Penitentiary, is there any possibility of a parole at some future date? Foreman F. P. Leahy." To the above question the Court replied: "Members of the Jury: [344] The Court has instructed you on all the law in the case; hence I cannot answer your attached question. Wm. S. Connor, Judge."

Error is assigned on the court's action (1) "in considering the question sent up by the jury relating to parole"; (2) "in taking as long as two and one-half (2½) hours in attempting to answer the question"; and (3) in attempting to answer the question with the two statements used, which in combination "denote an affirmative answer to the question of parole." Appellant further argues that "the jury intended to give the defendant life imprisonment but by considering the question of parole they were afraid that he would be later released as exemplified by the question to the Court so that the verdict was not the intention of the jury because of the error of the Court."

The first of these assignments is insufficient under Supreme Court Rule 27.20 because it is too general. The use of the word "consider-

ing'' as used specifies no ground of error and presents nothing for review. The second assignment has no support in the record, since there is nothing in the record to show any appreciable lapse of time in sending the answer to the question. The recital in the unverified motion for a new trial concerning the lapse of two and one-half hours may not be considered as it did not prove itself. State v. Brewer (Mo. Sup.), 286 S.W. 2d 782, 784(6). As to the third assignment, the record fails to show that any objection or protest was made to the action of the court in sending an answer to the question or in sending the particular answer. In such situation there is no support in the record for this assignment of error. See Supreme Court Rule 28.01; Sec. 510.210 RSMo 1949; State v. Smith (Mo. Sup.), 261 S.W. 2d 50, 57(10); State v. Leonard (Mo. Sup.), 182 S.W. 2d 548, 551(2). There is no showing that appellant had no opportunity to object.

The argument that the jury intended to give the defendant life imprisonment and that the verdict returned was not the verdict intended ''because of the error of the court'' in forwarding the reply to the question, is not supported by the record. The allegation does not prove itself. Further, no protest or objection was interposed to the action taken by the court and there is no support for such an assignment of error.

The last assignment or comment of the motion for a new trial is that, ''the verdict was such as to constitute cruel and unusual punishment and as such is against the Constitution of the State of Missouri and the Constitution of the United States.''. The assignment is insufficient as the error is not specified or ground stated, however, the punishment assessed by the jury in the verdict returned was within the provisions of Section 559.030 RSMo 1949, which in part provides that ''persons convicted of murder in the first degree shall suffer death, or be punished by imprisonment in the penitentiary during their natural lives.'' The record clearly shows a case of homicide in the perpetration of an attempted robbery. The essential facts are not in dispute. Fixing the punishment for the crime was a legislative matter. The legislature has provided that such a crime shall constitute murder in the first degree and has further fixed the range of punishment. The jury assessed the punishment within the limits provided and it cannot be adjudged excessive, cruel or unusual. State v. McGee, 361 Mo. 309, 234 S.W. 2d 587, 590; State v. Copeland, 335 Mo. 140, 71 S.W. 2d 746, 752.

We have further examined the information and find it sufficient, the verdict was in proper form and responsive. Allocution was afforded, and judgment and sentence were duly pronounced.

Finding no errors in the record, the judgment should be affirmed. It is so ordered. All concur.

Date of execution fixed for Friday, August 24, 1956.