STATE of Missouri, Respondent,

v.

Willie BENJAMIN, Appellant.

No. 46025.

Supreme Court of Missouri,
Division No. 2.

Feb. 10, 1958.

Clarence E. Godfrey, St. Louis, for appellant.

John M. Dalton, Atty. Gen., Grover C. Huston, Asst. Atty. Gen., for respondent.

STOCKARD, Commissioner.

Willie Benjamin was found guilty of robbery in the first degree by means of a dangerous and deadly weapon, Sections 560.120 and 560.135 (all statutory references are to RSMo 1949, V.A.M.S.), and the jury assessed his punishment at five years imprisonment in the state penitentiary. He has appealed from the ensuing judgment. No brief was filed in this court on behalf of appellant. Therefore, we shall look to the motion for new trial for his assignments of error.

 Appellant contends that the trial court erred in overruling his motion for judgment of acquittal made at the end of the state's evidence and again at the close of the entire case. We need not consider the ruling of the court on the motion made at the end of the state's evidence. Appellant subsequently offered evidence in his own behalf, and for that reason the error, if any, was waived. State v. Scott, Mo. Sup., 299 S.W.2d 526 [1]. The effect of the motion made at the close of all the evidence was that appellant contended that the state did not make a submissible case for the jury. In considering the ruling of the court on this motion we consider as true the evidence favorable to the state, and we take into consideration the inferences favorable to the state reasonably to be drawn therefrom. State v. Sheard, Mo.Sup., 276 S.W.2d 191 [3].

A jury could reasonably find from the evidence the following facts and circumstances. Dallas Staten lived at 1421 North Euclid in the City of St. Louis, and on June 23, 1956, about 6:15 o'clock in the evening, a former girl friend named Mary Taylor came to his room. She and Staten had an argument and a "tussle," and Mary Taylor then left. A little later appellant and another man, whom Staten did not know, came to his room and asked if they could look for some keys. Permission to do this was given. Appellant then called Staten a "bad name", stuck a shotgun in his side, told him to put up his hands, and took about $7 in loose change from his pocket. The other man hit Staten on the side of his head with a flashlight and knocked him unconscious. Appellant was arrested about 1:15 o'clock the following morning near the place of the robbery. At the time he had in his possession a loaded shotgun.

Appellant testified in his own behalf, and his version of the events was as follows: He was with a girl friend named Gertrude and a person named Spangner. Mary Taylor suggested that after she put her children to sleep they all go to her house to play cards. Mary left, and after the others had waited awhile Gertrude went to see about her. When Gertrude returned she stated, "There's fighting in there." About that time Mary came running out of the house where Staten lived. Her blouse was torn, and she reported that she had lost her door keys and she asked appellant, Spangner and another person named Noble to help her find her keys. Appellant and Noble went to Staten's house, and Spangner went to his car to get a flashlight. When appellant entered the hall he asked and was granted permission to look for Mary's keys. He was "patting on the floor" hunting the keys when he "heard someone pass a lick." He looked up and saw Spangner strike Dallas over the head with the flashlight and say, "What's wrong with you, man?" Appellant then said, "We better go," and when he got outside both Gertrude and Mary had left. Noble asked Spangner to take him down on 20th Street to find his brother, which he did. Appellant and Spangner then returned to the area where Staten lived to look for Gertrude. When appellant started to enter a restaurant, Spangner warned him that "they may try to gang up on you in there." Spangner then obtained a sawed off shotgun from his automobile and gave it to appellant who stuck it under his belt and hid it with his shirt. Appellant then went into the restaurant and sat on a piano stool. While waiting for his eyes to

get adjusted to the darkness, he was arrested.

■ It is evident that the trial court correctly denied appellant's motion for a judgment of acquittal at the end of the entire case. There was substantial evidence to support every element of the offense of which appellant was charged. It was for the jury to determine whether it would believe appellant's version or the state's version of what occurred.

■ Near the end of the oral argument to the jury, the assistant circuit attorney commented that "the state has no right of appeal." Appellant's objection thereto was sustained and the trial court stated that the "jury is instructed to disregard it and they won't take or consider that in any verdict they return in this court." Appellant then moved that the jury be discharged and that a mistrial be declared. This was denied. Appellant assigns as error the failure of the trial court to declare a mistrial.

It has generally been held that it is improper for the prosecution to comment to the jury that the state cannot appeal. 23 C.J.S. Criminal Law § 1101. However, "(w)hether or not the remarks of counsel are improper, and whether or not improper remarks are prejudicial under the facts of the particular case and necessitate a reprimand of counsel or a discharge of the jury are matters which rest very largely within the trial court's discretion, and the appellate court will not interfere unless the record shows an abuse of such , discretion to the appellant's prejudice." State v. Green, Mo.Sup., 292 S.W.2d 283, 288 [10]. The trial court promptly sustained the objection and instructed the jury not to consider the remark. Under the circumstances, we cannot say that the trial court abused its discretion in refusing to declare a mistrial.

Appellant's next assignment of error is that "the court erred in overruling defendant's objection to counsel for the state, in the final half of the closing argument, arguing that defendant was a menace to the community by carrying a weapon. This was an attempt by the state to prove the charge by arguing that defendant was guilty of crime or bad conduct in having a gun in his possession. This was prejudicial to this defendant and the court erred in refusing defendant's request that a mistrial be declared." In the motion for new trial a portion of the record is quoted in support of this assignment. The argument of the assistant circuit attorney immediately prior to the objection of appellant pertained to the duty of the jury to impose punishment commensurate with the crime if the appellant was found guilty, and we shall set out a greater portion of the record than that quoted in the motion for new trial.

"Mr. Cahill: * * * I say to you this is not a case where you should simply slap the man over the wrists. You shouldn't do that. Any man who carries in a big city like this—

"Mr. Godfrey: (interrupting) Your Honor, I ask that that be stricken from the record, the jury be discharged and a mistrial be directed, jury be told to disregard that as highly improper. Mr. Cahill is completely making this a gun case. He could have issued a carrying concealed weapon but he didn't do that, your Honor—continually all through the final argument—there is nothing in the instructions about because a person carried a gun he committed a robbery. There is absolutely nothing in that, your Honor.

"The Court: Objection overruled; Motion for a mistrial be denied. The jury will recall the instructions.

"Mr. Cahill: (Resuming) I say to you, gentlemen, any man who carries a weapon like that in the dead of night, in a big city is a menace to the entire community. He is a man who places in jeopardy all of us who use the streets of the city."

■■ No objection other than that set out above was made to the argument we have quoted. There was evidence that in the nighttime appellant carried a sawed off shotgun on a public street and into a public restaurant in the City of St. Louis, which admittedly is a big city. It is a fair argument and comment on the evidence that in doing this appellant was a menace to the community, and that he placed in jeopardy all who used the streets, at least in that area. The control of arguments of counsel is largely within the discretion of the trial court and there was no abuse of discretion here. For somewhat similar situations, see State v. Jones, Mo.Sup., 227 S.W.2d 713 [18]; State v. Bell, Mo.Sup., 300 S.W. 504 [2]; State v. Hulbert, Mo., 228 S.W. 499 [8].

Appellant next contends that the trial court erred in not declaring a mistrial under the following circumstances. Sergeant Fred Grimes, a member of the St. Louis Police Department, testified for the state concerning certain statements made to him by appellant. On cross-examination by appellant's counsel he was asked if he had written a statement for appellant to sign, and he replied that he had not. He was then asked if "any other police officers" wrote a statement, and he replied, "No, sir. During the course of that investigation, I understood later a statement was made to Federal officers." Appellant's counsel then stated: "I object to that, ask that it be stricken from the record, jury be told to disregard it." The ruling of the trial court was as follows: "It will be so stricken. Jury is instructed to disregard the last remark, and they won't take or consider that in any verdict they will return in this Court. Objection sustained as not responsive."

■ Appellant obtained everything he requested from the trial court. He did not request that a mistrial be declared. Appellant is now in no position to complain because the court limited its ruling to the precise relief requested. See State v.

Rhoden, Mo.Sup., 243 S.W.2d 75 [2,3]; State v. Marshall, 317 Mo. 413, 297 S.W. 63 [19]; State v. Mosier, Mo.Sup., 102 S.W.2d 620 [19].

■■ The next assignment of error is that "The Court failed to give any assault instruction, either common assault, assault with intent to do great bodily harm or assault with intent to rob." This assignment does not preserve anything for review because it does not comply with Supreme Court Rule 27.20, 42 V.A.M.S. In a case in which the defendant was charged with and convicted of murder in the first degree, it was held that "(a)n assignment which merely states that the court erred in giving a particular instruction, or in refusing to give a particular instruction, or in refusing to instruct on a particular matter such as murder in the second degree have been held insufficient in not stating 'in detail and with particularity' the specific grounds or causes of complaint in the motion for a new trial." State v. Burnett, 365 Mo. 1060, 293 S.W.2d 335, 343 [15], certiorari denied 352 U.S. 976, 77 S.Ct. 367, 1 L.Ed.2d 326. However, in this case there was no evidence in the record to sustain or require the giving of any of the instructions referred to in the assignment of error. The state's evidence unquestionably established the offense of robbery in the first degree by means of a dangerous and deadly weapon. Under the state's evidence appellant was either guilty of the offense charged or he was guilty of no offense at all. The defendant's theory of the case, and his evidence supporting that theory, was to the effect that his only purpose in going to Staten's room was to search for some lost keys. While doing this, and while unarmed, he "heard someone pass a lick" (whatever that means) and turned to see Spangner strike Staten on the head with a flashlight. Appellant's theory and his evidence was to the effect that this action on the part of Spangner was not anticipated by him and that he had no part in it.

■ Appellant's next assignment of error is that "The verdict of the jury was against the weight of the evidence." This is insufficient to preserve anything for review. State v. Sheard, Mo.Sup., 276 S.W. 2d 191 [2].

■ The last assignment of error is that the verdict of the jury "was such as to constitute cruel and unusual punishment." The punishment imposed was the minimum authorized for the offense of which appellant was found guilty. Fixing the limits of the punishment for crime is a legislative and not a judicial function. State v. Nord, Mo.Sup., 286 S.W.2d 775 [2]. Although it has been stated that an assignment of error worded substantially as this one is insufficient to present anything for review, State v. Burnett, 365 Mo. 1060, 293 S.W.2d 335, 344, it is readily apparent that the punishment imposed does not violate the constitutional prohibition against the infliction of cruel and unusual punishment.

We have examined the record and find no error in regard to matters not required to be preserved in the motion for new trial. The information properly charges the appellant with the offense of robbery in the first degree with a dangerous and deadly weapon. The verdict is in proper form. Appellant was granted allocution and the sentence and judgment are responsive to the verdict.

The judgment is affirmed, and the sentence pronounced shall be executed.

BOHLING and BARRETT, CC., concur.

PER CURIAM.

The foregoing opinion by STOCKARD, C., is adopted as the opinion of the Court.

STORCKMAN, P. J., EAGER, J., and HUNTER, Sp. J., concur.

LEEDY, J., not sitting.