STATE v. THOMAS LAVERNE CLEMONS, alias JIM COLLINS, Appellant.— No. 40206.—202 S. W. (2d) 75.

Division Two, May 12, 1947.

*J. E. Taylor*, Attorney General, and *Richard F. Thompson*, Assistant Attorney General, for respondent.

ELLISON, J.—The appellant, Thomas Laverne Clemons was convicted of robbery in the first degree by means of a dangerous and deadly weapon in the City of St. Louis on November 28, 1945, in violation of Sec. 4450.[1] His punishment was assessed by the jury at imprisonment in the state penitentiary for a term of five years, under Sec. 4453. He has appealed as a poor person under Sec's 13406 and 1404, and has filed no brief, but was represented at the trial in the circuit court by a Public Defender and one attorney whom he had employed. The assignments of error in his motion for new trial below, to which we must look in the absence of a brief, are:

"1. The Court erred in overruling the objections of the defendant to the questions asked by the Circuit Attorney of the State's witnesses.

"2. The Court erred in overruling the objection of Defendant's counsel to the introduction of statements made by the defendant at the time of his arrest.

"3. The Court erred in sustaining the objection of the Circuit Attorney to questions asked of witnesses by Defense Counsel.

"4. The Court erred in not granting to the Defendant a mistrial when an alleged police officer or deputy sheriff ran through the Court Room brandishing a pistol.

"5. The Court erred in overruling the Demurrer at the close of the State's case.

"6. The Court erred in overruling the Demurrer at the close of the entire case.

"7. The Court erred in giving to the Jury Instruction Number One.

"8. The verdict of the Jury was against the weight of the evidence.

"9. The verdict of the Jury was such as to constitute cruel and unusual punishment."

The brief of the learned Assistant Attorney General contends Assignments 1, 2, 3, 7 and 8 of this motion are too general to be considered on this appeal, in view of Sec. 4125, which requires that motions for new trial in criminal cases "must set forth in detail and with particularity in ▆▆▆ separate numbered paragraphs, the specific grounds or causes therefor. . . . " This contention must be sustained. It will be seen at a glance that the assignments challenged are wholly lacking in particularity. So many decisions have been written by this court on that point that we need not discuss it further. See 9 West's Mo. Dig., sec. 1064, p. 614; 12 Mo. R. S. A., pp. 761, 767-772 (8-10).

This leaves only paragraphs 4, 5, 6 and 9 of the motion to be considered. Of these, paragraphs 5 and 6 complain of the overruling

---

[1]References to our statutes are to R. S. Mo. 1939, and same section numbers in Mo. R. S. A., unless otherwise noted.

of the appellant's demurrers to the evidence at the close of the State's case, and at the close of the whole case. He did not stand on his demurrer at the close of the State's case, but testified in his own defense and presented two other witnesses. In these circumstances he waived his first demurrer but can rely on his second demurrer, challenging the sufficiency of the evidence at the close of the whole case. State v. Clark, 353 Mo. 470, 474(3), 182 S. W. (2d) 619, 622(5). This necessitates a review of the evidence.

The prosecuting witness, Thomas LaMar Rollins, lived in Louisiana, Mo. He was a soldier in the United States Army, it seems, and was in uniform. He was traveling alone in his automobile on Highway 61 from Alabama to his home. He testified that about 30 miles south of St. Louis and about 9 p. m. he picked up the appellant who was a hitch hiker. The latter noticed a pistol which Rollins had in the glove compartment of the automobile and later broached the subject of getting some girls in St. Louis.

Upon arrival there they went first to the "Solo Club" and had a sandwich, and then drove around a while during which time appellant fired Rollins' pistol in the air once. After that they went to the Dixie Hamburger Stand where appellant's sister-in-law joined them. Thence they went to the "Jungle Club." In the meantime they had been drinking brandy out of a bottle Rollins was carrying. He said he took very little of it, and was "fairly sober." Then they drove for a further time with Rollins at the wheel. Presently the appellant asked to drive, and did. He turned the car into a dark alley: stopped; took the pistol out of the glove compartment; pointed it at Rollins; said "I'll take the car;" and hit him over the head with the pistol.

From there on appellant retained possession of the pistol, carrying it stuck inside the waistband of his trousers within reach and in sight. Rollins' scalp was bleeding and his clothes were stained with blood from the blow appellant had struck with the pistol. Appellant drove him and his sister-in-law to her apartment, where he (appellant) had her get the civilian suit Rollins was carrying in his automobile. At appellant's order Rollins changed clothes to get rid of his bloody uniform and appellant took his wrist watch. He further wrote out a purported bill of sale of the automobile for a named consideration of $500, and forced Rollins to sign it; and took about $20 of money he was carrying. Then appellant drove him to within about a block or so of the bus station, let him out and gave him $3.30 for bus fare to Louisiana.

At the bus station Rollins complained to a policeman. He was taken to police headquarters and identified a photograph of the appellant. The latter was apprehended in Effingham, Illinois, about two weeks later, and was brought to St. Louis where he made a confession. The pistol, watch and automobile were recovered there. Ap-

pellant still had the automobile and the purported bill of sale therefor at the time. The pistol and watch were found in the possession of those to whom he said he had sold them.

The defendant testified that he took over the driving of the automobile because Rollins was too drunk to drive; and that he (appellant) drove into the alley when Rollins used vile language, with the intention of whipping him. But, he said, Rollins threatened him with the pistol whereupon he seized it and hit Rollins on the head with it. He further said Rollins actually sold him the automobile for $500, to be paid in monthly payments of $25.00. Appellant's sister and another young woman testified they were with Rollins, appellant and his sister-in-law at the Jungle Club for a while; that Rollins was drunk, used foul language, and that he voluntarily sold his watch to appellant for $5.

We are unable to see any ground upon which appellant can successfully maintain that the foregoing evidence was insufficient to make a prima facie case. The evidence offered in behalf of appellant simply raised issues of fact for the jury. The information closely followed the first clause of the statute, Sec. 4450; and charged the robbery was effected by use of a pistol, putting in fear, and force and violence to the person. The property taken was alleged to be the pistol (with which the robbery was committed), $25 in money, a wrist watch and the automobile.

There are decisions holding that when the accused had already obtained dominion over property by stealth and then used force and violence or putting in fear merely as a means of escape, the crime would not be robbery. State v. Holmes, 317 Mo. 9, 11(2), 295 S. W. 71(1), 58 L. R. A. 652. In this case it is true the appellant first snatched the pistol from the glove compartment of the automobile. But he then used it as a means of completing his dominion over the weapon itself, and of obtaining possession of the automobile, all as a part of the same res gestae. And it is generally held that when the sudden taking or snatching is concurrent with intimidation or violence the crime is robbery. 54 C. J., sec. 40, p. 1022-3; 46 Am. Jur., secs. 19, 21, pp. 148-9.

The taking of the watch and money followed later at the apartment of appellant's sister-in-law. But those acts also were perpetrated by force and intimidation through appellant's possession of the pistol and his present ability to use it. No contention is made that they were separate crimes. And even if there had been a failure of proof as to these items of property it would not have constituted a fatal variance or defect. 54 C. J., sec. 130, p. 1050; 46 Am. Jur., sec. 56, p. 164. The trial court did not err in overruling appellant's demurrer to the evidence at the close of the whole case.

 Assignment No. 4 in the motion for new trial complains of the trial court's failure to declare a mistrial "when an alleged police

officer or deputy sheriff ran through the court room brandishing a pistol.'' The record does not show what incident this assignment referred to. It does show that shortly after the Public Defender had begun to cross-examine the prosecuting witness, appellant's employed counsel, Mr. Kiley, interrupted and asked the court to declare a mistrial ''in view of a policeman running through the court room with a pistol in his hand, to stop an alleged jail break.''

The court replied: ''Mr. Kiley, be seated please. There is no evidence of that in the record. Just be seated.'' Then the court instructed the jury there was nothing before them showing any jail break had or had not occurred; that someone had passed through the court room, but that neither the court nor jury knew what had occurred or what he was doing; and that it was the jury's duty to confine themselves to the evidence in the case and render a verdict thereunder under the law as declared to them in the court's instructions.

There is no merit in this assignment. Apparently the incident referred to was wholly disconnected from the case on trial. Disturbances of a jury trial in circumstances more inflammatory have been held nonprejudicial, such as applause by members of the audience, when the court took prompt corrective action. State v. Dusenberry, 112 Mo. 277, 293(IV), 20 S. W. 461, 465(9); State v. Gartrell, 171 Mo. 489, 513(12), 71 S. W. 1045, 1051(10); State v. Pyle, 343 Mo. 876, 883(7), 123 S. W. (2d) 166, 170(10).

The remaining Assignment in the motion for new trial is that the punishment assessed by the jury, five years imprisonment in the penitentiary, was cruel and unusual. The maximum allowed by Sec. 4453, since the robbery was committed by means of a dangerous and deadly weapon (as the jury's verdict found), could have been death or imprisonment in the penitentiary for not *less* than five years; for robbery in the first degree by other means the minimum is five years. Laws Mo. 1943, p. 518. Obviously this ▮ assignment is entirely groundless. The appellant's punishment was the statutory minimum.

As to the record proper, the information substantially follows the first clause of Sec. 4450, and is good. State v. Kelly (Mo. Div. 2), 107 S. W. (2d) 19, 20(2). The verdict was in due form. The defendant was granted allocution. There is no complaint in the motion for new trial that the court failed to instruct on all the law of the case under Sec. 4070(4). The record does not show the appellant was formally arraigned and entered a plea of not guilty. But under Sec. 4004, this was not fatal. State v. Cole, 354 Mo. 181, 194(11), 188 S. W. (2d) 43, 51(14), 189 S. W. (2d) 541. We find no error in the record and the judgment and sentence are accordingly affirmed. All concur.