**STATE of Missouri, Respondent,**

**v.**

**Frank Marion VANDAMENT, Appellant.**

**No. 45693.**

Supreme Court of Missouri,
Division No. 1.

March 11, 1957.

Milton M. Metz, St. Louis, for appellant.

John M. Dalton, Atty. Gen., Grover C. Huston, Asst. Atty. Gen., for respondent.

DALTON, Judge.

Defendant was convicted of robbery in the first degree by means of a dangerous and deadly weapon and was sentenced to five years imprisonment in the state penitentiary.  See Sections 560.120 and 560.135 RSMo 1949, V.A.M.S.  He has appealed, but has not favored us with a brief.  We shall examine the assignments of error in his motion for a new trial.

■ Error is assigned on the action of the court in overruling defendant's motion for judgment of acquittal offered at the close of the state's evidence and also offered at the close of all the evidence.  The grounds stated were that the state failed to prove the essential elements of robbery in

the first degree and failed to prove defendant guilty of any offense whatsoever. The error, if any, in overruling the motion at the close of the state's evidence was waived when the defendant subsequently offered evidence in his own behalf. State v. Bledsoe, Mo.Sup., 254 S.W.2d 618, 622(6); State v. Grubbs, 358 Mo. 323, 214 S.W.2d 435, 436(3); State v. Scott, Mo., No. 45,-488, 299 S.W.2d 526. A review of the evidence is necessary in order to determine whether or not the court erred in overruling the motion at the close of all the evidence.

While the information properly charged the defendant as a principal, the state's theory was that defendant was present, aiding, abetting and consenting to the commission of the crime charged, although outside the building where the crime was committed; and that he shared in the proceeds of the robbery. See Section 556.170 RSMo 1949, V.A.M.S.

The evidence on behalf of the state tended to show that on September 7, 1955, Mrs. Ethel Andrews was the owner and operator of a tavern in the City of St. Louis, Missouri, located at 3685 Broadway, and known as the Mi-Way Bar. Daylight Saving Time was in effect in said city and the closing time for her tavern was 2:30 a.m., Daylight Saving Time. At about 1:20 a.m., Mrs. Andrews was alone in the tavern, there were no customers, and she went into the kitchen and began to wash dishes, pots and pans, but stood where she could see into the tavern and see the tables and stools where customers would sit. She heard a noise in the tavern but saw no one, so she walked over to where she could see behind the tavern bar. There she saw two strange men with handkerchiefs over their faces. One was at the cash register, while the other was going through the drawers. "They were pulling the drawers out." She didn't say anything, but stood in the door "petrified", watching them. One of them ran into the storage room, then came back into the tavern and to the back door. When he saw Mrs. Andrews

in the kitchen doorway, he pointed a pistol at her, "stuck the gun out" towards her, and she "screamed, ran out into the yard, screamed again, ran back into the kitchen, and upstairs" where she resided, and she then called the police. She stated that, when she saw the pistol, she didn't see anything further. On cross-examination she stated that she didn't know how long the men were in the tavern, she would guess about two minutes, perhaps not so long. When they saw her, one ran. She further said, "all I saw was he stuck the gun out like that (indicating), and I screamed and ran out."

Defendant was arrested on September 19, 1955, about 9:30 a.m., in front of 1622 Carroll Street. He was in a truck in front of that address and he was questioned that afternoon in the presence of Mrs. Andrews. Mrs. Andrews testified that on the 19th of September, following the robbery, an officer came for her and she went to the Hampton Avenue Police Station in St. Louis where she saw defendant for the first time and heard him questioned by police officials.

She testified that the defendant said: "* * * three fellows in a car picked him up at Fourteenth and Lafayette, and they told him they were going to rob a tavern with a gun, but they didn't know which one; they drove around, and found mine, * * * he didn't know which tavern they were going to rob; they went looking for one,—so, they drove around several times; and they stood in my back yard, at the kitchen door, watching me wash dishes, to be sure I was alone, and they came in; said he sat in the car with the motor running, with another man, and the other two came in." The witness further testified that defendant said they had parked the car by her alley-gate and all four got out of the car and, after seeing she was alone, they decided to rob her. Defendant further said in her presence that, after the two boys came out of her tavern, they gave him his share of the money, which was $3 and he drank some

of the whiskey taken from her tavern. He said the men told him that only $12 was obtained. According to the witness $26 in $1 bills was in fact taken from the cash register in her tavern. She further testified that, while she was at the police station, the defendant said he had seen her before as he stood in her yard watching her wash dishes.

There was other evidence that defendant was questioned by detective Frank Bill and detective Corporal Virgil Kleine in the presence of Mrs. Andrews and both of these witnesses testified that defendant made statements to the same effect as testified to by Mrs. Andrews.

Defendant did not testify in his own behalf and he offered the testimony of only one witness. This witness testified that, at about the time in question, defendant worked with him on a truck used in peddling vegetables; that defendant slept on the truck in front of witness' premises every night, except Saturday and Sunday nights; that witness' bedroom window faced the street; that witness could look out of his bedroom window every night and see defendant on the truck; that witness checked to see if defendant was on the truck before he went to bed about 9:30 to 10:00 p.m.; that defendant was on the truck on the evening of September 6, 1955; and that he was there the next morning around 2:00 to 3:00 a.m., when witness got up to go to work with defendant on the truck.

Defendant was prosecuted under the Habitual Criminal Act, Sec. 556.280 RSMo 1949, V.A.M.S., one prior conviction for larceny of a motor vehicle being alleged. Evidence was offered in support of this allegation and, also, of defendant's discharge from the state penitentiary, but the jury, while finding the defendant guilty of robbery in the first degree by means of a dangerous and deadly weapon, found him "not guilty of one prior conviction of felony as charged in the information."

There was evidence from which the jury could find that defendant entered into an agreement with the others in the automobile and consented to cooperate with them in a robbery. He accompanied them in seeking a place where a robbery could be committed and in finding a person to rob. He got out of the automobile and, with the others, viewed the premises and person intended to be robbed and he then waited in the automobile parked nearby, while the events narrated took place. He accompanied the men after they returned from the tavern and he participated in the benefits derived from their action, in that he accepted a part of the money obtained knowing that it was unlawfully obtained, and he drank part of the whiskey taken at the same time. The evidence was sufficient for the jury to infer a conspiracy and agreement to rob and infer active participation in whatever offense was committed. See State v. Scott, Mo., 298 S.W.2d 435; and State v. Scott, Mo., No. 45,448, 299 S.W.2d 526. However, we find no substantial evidence in this record that robbery in the first degree by means of a dangerous and deadly weapon was committed by the men who entered the tavern.

It is well settled that where the state's evidence shows that the accused had obtained physical possession of the property by stealth and that force and violence or putting in fear was used only as a means of escape, or where the evidence fails to show that possession of the property was obtained by force or violence or putting in fear, the crime is not robbery. The applicable law is reviewed at length in the case of State v. Holmes, en Banc, 317 Mo. 9, 295 S.W. 71, 58 A.L.R. 652. And see State v. White, 326 Mo. 1000, 34 S.W.2d 79; State v. Sharpe, 326 Mo. 1063, 1067, 34 S.W.2d 75; State v. Clemons, 356 Mo. 514, 202 S.W.2d 75, 78; State v. Spivey, Mo.Sup., 204 S.W. 259; State v. Parker, 262 Mo. 169, 170 S.W. 1121, L.R.A. 1915C, 121.

█ Section 560.120 RSMo 1949, V.A.
M.S., provides that "every person who shall
be convicted of *feloniously taking the prop-
erty of another* from his person, or in his
presence, and against his will, by violence
to his person, or *by putting him in fear of
some immediate injury to his person;*
* * * shall be adjudged guilty of robbery
in the first degree." (Italics ours.) The
cause was here submitted by an instruc-
tion drawn under the "putting in fear"
provision of the statute. Such fear or in-
timidation must have preceded or been con-
temporaneous with the actual taking of
physical possession of the property. State
v. Clemons, supra; State v. Parker, supra.
Force or intimidation employed subsequent
to the taking, as a means of escape or to
retain possession of the property, will not
support a charge of robbery.

"In order to constitute robbery by intimi-
dation, it is essential that the property
taken be surrendered because of the ap-
prehension of injury, and that the fear be
that under compulsion of which the victim
parts with his property. The fear essential
to robbery must be caused by accused, in-
tentionally, and not arise from the mere
temperamental timidity of the victim." 77
C.J.S., Robbery, § 16, p. 459; State v. Par-
ker, supra, 262 Mo. 169, 177, 170 S.W. 1121;
State v. Weinhardt, En Banc, 253 Mo. 629,
636, 161 S.W. 1151. In the Parker case the
court said [262 Mo. 169, 170 S.W. 1123.]:
"The fright of him who is robbed must
be under the law an objective fright, as
contradistinguished from subjective fright;
it must have been due, in short, to some act
on the part of the accused, and not arise
from the mere temperamental timidity of
the person whose property happens to be
stolen from his person or presence. State
v. Weinhardt, 253 Mo. 629, 161 S.W. 1151.
Here defendant merely put his hand into
the pocket of Buckhold while his accomplice
Settle engaged him in conversation. The
act of theft was wholly accomplished before
Buckhold got frightened. No blow was
struck or threatened; no weapon was used
or shown; nor was any threat of injury,
either immediate or remote, uttered by de-
fendant. Robbery by putting in fear, then,
clearly falls out of the case."

█ We find no substantial evidence
from which a jury could be permitted to find
that any money or property of Mrs. Ethel
Andrews was taken possession of by ei-
ther of the alleged robbers after the as-
sault upon her by means of the dangerous
and deadly weapon, or that any property
was taken from her possession after she
was put in fear of some immediate injury
to her person by reason of the assault.
There is no substantial evidence that any
money was taken from her cash register
or taken possession of by either of the
men in Mrs. Andrews' presence after one
of the men had pointed the gun at her,
after they discovered her presence in the
kitchen doorway. So far as appears from
this record the gun was used only to
facilitate escape and the men ran from the
tavern when she ran out, after they had
obtained or could have obtained physical
possession of the property she claims was
taken. At least there is no evidence that
they took possession of her money after
she was put in fear. Nor is there any evi-
dence tending to show that the taking of
the mentioned money was contemporane-
ous with the use of fear or force to
obtain it. The fact that the witness quoted
the defendant as stating, as a conclusion,
that he had participated in the "holdup"
or "robbery" would not supply the defi-
ciency in the state's evidence.

The information, however, included with-
in its terms all the elements of a proper
charge of larceny, and it has been held
that under an indictment for robbery, the
accused may properly in a proper case be
convicted of larceny. State v. Parker,
supra, 262 Mo. 169, 180, 170 S.W. 1121;
State v. Holmes, supra. On the record
presented the court erred in not directing
an acquittal on the charge of robbery in
the first degree as requested, but the cause
should have been submitted on larceny.

The judgment is reversed and the cause
remanded.

All concur.