**STATE of Missouri, Respondent,**

v.

**Scott DEBOLD, Appellant.**

**No. 51846.**

Missouri Court of Appeals,
Eastern District,
Division Four.

June 2, 1987.

Motion for Rehearing and/or Transfer Denied July 2, 1987.

Application to Transfer Denied Sept. 15, 1987.

William L. Webster, Atty. Gen., Elizabeth A. Levin, Asst. Atty. Gen., Jefferson City, for respondent.

David C. Hemingway, Asst. Public Defender, St. Louis, for appellant.

SIMON, Judge.

Defendant, Scott W. Debold, was found guilty of the robbery of Ken Heyer in the first degree (§ 569.020, RSMo (1978)), (all further references shall be to RSMo 1978), armed criminal action (§ 571.015), and assault (§ 565.050), for which he received consecutive terms of 30, 15, and 10 years imprisonment, respectively.

On appeal, defendant contends that the trial court erred in: (1) submitting instruction 6, the verdict director for robbery in the first degree, because said instruction lacked evidentiary support and invited jury speculation and confusion, on the force necessary to find a forcible theft; and (2) submitting Instruction No. 7, verdict director for armed criminal action, which required a finding of defendant's guilt of robbery in the first degree and lacked evidentiary support for forcible taking of Heyer's money.

The prosecution of the defendant grew out of an investigation by undercover police officer, Ken Heyer, into the drug dealings of Susan Smith. Heyer testified that he agreed to meet Smith on a school parking lot for the purpose of buying cocaine from her. Heyer, who was wired with a radio transmitter, was met at the parking lot by Smith and defendant. Smith introduced defendant as her "source" and the defendant and Heyer entered Heyer's car. Defendant asked if Heyer had the money and Heyer placed the $300 on the car seat between himself and the defendant.

Heyer testified that the defendant wanted to take the money across the street to his cousin and bring the cocaine back. Heyer, however, said that he would not let the money out of his custody. Heyer offered a compromise wherein he would sit in Smith's car with the money while the defendant got the cocaine. Defendant then directed a cocked .38 caliber revolver to-

ward Heyer. Heyer could see the bullets in the cylinder.

Heyer told defendant he was scared and not to shoot him; however, the defendant told Heyer to put his hands on the steering wheel and pulled the keys out of the ignition. Heyer told defendant to take the money; that it was not "worth doing something stupid over." As Heyer tried to talk, defendant whistled out of the passenger window to another man, Dennis Lynch, who ran to the car. Defendant accused Heyer of being "a cop" and "wired" which Heyer respectively denied. Defendant began frisking Heyer.

Heyer continued denying he was "a cop" and stated that all he had was a knife which he gave the defendant while still at gunpoint. In order to try to get out of the car, Heyer said that he was going to be sick. As he opened the door, Heyer observed Lynch pointing a revolver at him. Defendant then grabbed Heyer by the neck and ordered him to get down on the car seat. As Heyer complied, he received a sharp blow to the back of his head. Heyer was feeling dazed and was having trouble seeing when he was struck again. He heard defendant say that if he got up again, they would kill him.

Heyer then heard a car leave and radioed for help. Heyer was subsequently taken to the hospital and received stitches in the back of his head.

When the police stopped the car in which defendant, Smith and Lynch were travelling, they found two revolvers, and Heyer's knife. Following his arrest, the police found the $300 in defendant's wallet. After waiving his *Miranda* rights, defendant admitted that he, Smith, and Lynch had formulated a plan to rob Heyer. Defendant stated that Heyer counted the money and placed it on the car seat between them. Defendant then picked the money up and he told Heyer that he had to go across the street to his cousin's house in order to get the drugs. Defendant stated that Heyer would not let him get out of the car with the money until he had the drugs. Defendant confessed that he pulled a gun on Heyer and stated, "I'm going to take your money." Defendant stated that he became suspicious of Heyer and thought that he was an undercover police officer. Defendant stated that based on his suspicion he proceeded to search Heyer. Defendant whistled for Lynch, who came over to the car, and also pulled a gun on Heyer after defendant informed him of his suspicion. At this time, defendant stated that he grabbed Heyer by the neck, forced him down on the seat, and hit him twice on the head; once with his fist and once with the gun. Defendant admitted taking Heyer's car keys from the ignition and fleeing with Lynch and Smith in Smith's car.

Defendant testified at trial, denying any robbery and stated Smith had told him Heyer had "ripped her off" and that she wanted defendant around while she tried to get her money back. He claimed that he thought Heyer gave him the money in repayment of what he owed Smith and that Lynch was the one who struck Heyer. Defendant further testified that the three then left the scene at which time Smith told him for the first time about drugs being involved.

In his first point on appeal, defendant contends that the trial court erred in submitting Instruction No. 6, the verdict director for robbery, first degree, because the evidence shows that the taking of Heyer's money was not accomplished by use of force or fear or the threat thereof, but rather Heyer simply gave the money to the defendant prior to the use of any force or fear thereof. Instruction No. 6 charged the jury as follows:

[I]f you find and believe from the evidence beyond a reasonable doubt:

First, that on or about November 20, 1985, in the County of St. Louis, State of Missouri, the defendant or another stole U.S. currency, one knife and car keys in the possession of Ken Heyer, and

Second, that the defendant or another in doing so threatened the immediate use of physical force on or against Ken Heyer for the purpose of forcing Ken Heyer to deliver up the property, and

Third, that in the course of stealing the property, the defendant or another displayed or threatened the use of what appeared to be a deadly weapon or dangerous instrument,

then you are instructed that the offense of robbery in the first degree has occurred.

Defendant argues that the jury instruction, which required a finding that the money was stolen and that Heyer was forced to deliver up the money by threats, weapons or otherwise, lacked evidentiary support. Defendant concedes that the evidence is sufficient to support a conviction for first degree robbery based on the forceful theft of Heyer's knife and car keys. However, defendant argues that the inclusion of money (U.S. currency) in the instruction was not harmless error. He contends that the conjunctive submission of the money, knife and car keys invited jury confusion and speculation as to the necessary force for the charge of robbery in the first degree.

Section 569.020 setting forth the elements robbery in the first degree provides:

1. A person commits the crime of robbery in the first degree when he forcibly steals property and in the course thereof, he, or another participant in the crime,

(1) causes serious physical injury to any person; or

(2) is armed with a deadly weapon; or

(3) uses or threatens the immediate use of a dangerous instrument against any person; or

(4) displays or threatens the use of what appears to be a deadly weapon or dangerous instrument.

Under § 569.010, Chapter Definitions:

(1) A person "forcibly steals", and thereby commits robbery, when, in the course of stealing, as defined in section 570.030, RSMo, he uses or threatens the immediate use of physical force upon another person for the purpose of:

(a) Preventing or overcoming resistance to the taking of the property or to the retention thereof immediately after the taking; or

(b) Compelling the owner of such property or another person to deliver up the property or to engage in other conduct which aids in the commission of the theft;

"Stealing" is defined by § 570.030 as follows:

*Stealing*—1. A person commits the crime of stealing if he appropriates property or services of another with the purpose to deprive him thereof, either without his consent or by means of deceit or coercion.

Defendant relies on the case of *State v. Vandament,* 299 S.W.2d 532 (Mo.1957), for the proposition that "where the evidence fails to show that possession of the property was obtained by force or violence or putting in fear, the crime is not robbery" even if force and violence or putting in fear occurs after the taking. *Id.* at 534–35. *See also State v. Holmes,* 317 Mo. 9, 295 S.W. 71 (Mo. banc 1927) (Violence or putting in fear must precede or accompany taking). *Vandament* was decided under § 560.120, RSMo (1949) which provided that "every person who shall be convicted of feloniously taking the property of another from his person, or in his presence, and against his will, by violence to his person, or by putting him in fear of some immediate injury to his person; ... shall be adjudged guilty of robbery in the first degree." *Vandament,* 299 S.W.2d at 535 (emphasis omitted).

Defendant points to Heyer's testimony on cross-examination to show that Heyer gave defendant the money before the use of any force on the part of defendant.

Q. Okay. Now, on this particular evening, according to your direct examination, Mr. Debold asked to see the money; right?

A. (Heyer) Yes, he did.

Q. Okay. And you, in fact, produced the money?

A. Yes.

Q. Counted it out for him on the seat; right?

A. Yes, sir.

Q. Okay. And he picked the money up and put it in his pocket; is that right?

A. Yes.

Q. All right. At that point, he didn't have a gun to your head and say, "Give me your money"; did he?

A. No, he didn't.

Defendant's reliance on Heyer's testimony on cross-examination is of no assistance. A careful examination of Heyer's testimony on direct examination supports a finding that the forcible taking of the money occurred after or simultaneously with defendant's threats of force and use of violence. Heyer testified that he voluntarily placed the money on the seat of his car between defendant and himself. Heyer testified that defendant then asked if he had come alone. Heyer responded that he had, but since there were three other cars in the area he suggested that he pull his car on the other side of Smith's car in order to conceal their transaction. This was done and then, Heyer testified, defendant "offered to take the money, as he said, across the street to his cousin, and then he'd bring the cocaine back." Heyer told defendant that he "wasn't going to let the money walk, which means I didn't want the money to leave my custody." As an alternative, Heyer suggested that he would "keep the money with [him]," and that he would sit in Smith's car until defendant got the cocaine and brought it back. Heyer testified that at the time of his suggestion he was looking over at Smith and that suddenly he heard a click. "At that time I looked down towards [defendant's] lap and he was holding a revolver on me."

Heyer's testimony and its reasonable inferences indicate that the money remained on the seat of Heyer's car until defendant pointed a loaded .38 caliber at Heyer. Heyer did not testify that he gave defendant the money before this threat and display of force. He testified that he "didn't want the money to leave [his] custody" and that normal operating procedure was to hand over the money and get the drugs all at the same time. Admittedly, Heyer did not testify that he saw defendant take the money from the seat of his car. However, at the time of defendant's arrest, $300 in bills marked by Heyer were recovered from his wallet. The reasonable inference being that defendant took the money from the car seat.

Heyer's testimony on cross-examination is not contradictory. Heyer testified on cross-examination that he counted out the money on the car seat for defendant. He testified further that defendant picked the money up and put it in his pocket. However, Heyer was not asked and did not testify as to the timing of defendant taking the money and placing it in his pocket. Heyer was asked, "At that point, [defendant] didn't have a gun to your head and say, 'give me your money;' did he?" Initially, we note that the question is a negative compound and is in improper form because it asks for two answers: (1) At that time he didn't have a gun to your head, did he?; (2) At that time he didn't say, "give me your money," did he? The vice of compound questions is generally recognized. *See* 81 Am.Jur.2d *Witnesses* § 428 at 437 (1976). They are clearly misleading and confusing both to the witness being asked the question and to the jury listening to the answer. Here, Heyer answered the question, "no, [defendant] didn't." No, defendant didn't do what at that point. No, he did not point the gun at Heyer's head; or, no, he did not demand that Heyer give him the money.

Regardless of the form of the question, an answer of "no" to the question does not establish that defendant took or was given the money before the use of force or violence or the threat thereof. The record does not indicate that defendant at any time pointed a gun to Heyer's head. What if the defendant had his gun trained on Heyer's chest during the taking of the money? An answer of no to the question put is the truth, but it does not establish that the taking occurred before the use of force or the threat thereof. Likewise, by answering that defendant did not say "give me your money," in no way established that defendant did not demand the money in another fashion. Indeed, in his confession, defendant said, "I'm going to take your money." Clearly, nothing contained in Heyer's cross-examination testimony, or any other evidence, indicates that the taking of the money was accomplished without

force or the threat thereof. Therefore, defendant's first point is without merit.

Defendant also contends that the trial court erred in giving the verdict director for armed criminal action since that instruction required the jury to find the defendant guilty of robbery. Our disposition of point one sufficiently disposes of defendant's second point.

Judgment affirmed.

GARY M. GAERTNER, P.J., and STEPHAN, J., concur.